UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB LEE AUKER, | : | |
| Plaintiff | : | No. 3:CV-12-1016 |
| v. | : | (Judge Nealon) |
| JUNIATA COUNTY PRISON, et al., | : | |
| Defendants | : | |

FILED
SCRANTON
AUG 2 5 2014
PER ______ DEPUTY CLERK

**MEMORANDUM**

## I. BACKGROUND

On May 30, 2012, Plaintiff, an inmate formerly confined in the Smithfield State Correctional Institution, Huntingdon, Pennsylvania, ("SCI-Smithfield"), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1, complaint). On July 27, 2012, Plaintiff filed an amended complaint. (Doc. 13, amended complaint). The named Defendants are the Juniata County Prison and the following Juniata County Prison employees: Tom Lyter, Former Warden, Teresa O'Neal, Acting Warden, Steve McLaughlin, Deputy Warden, Lori McConlogue O'Shaughnessy, physician, and Kelly Brumbaugh, nurse. Id.

On January 28, 2014, Defendants Juniata County Prison, Lyter, McLaughlin, and O'Neal filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). (Doc. 39). On February 11, 2014,

Defendants filed a brief in support of the motion. (Doc. 40). Plaintiff was granted two enlargements of time within which to file a brief in opposition, and failed to do so. See (Docs. 45, 49).

On July 29, 2014, upon consideration of Plaintiff's April 21, 2014 letter to the Court indicating that he would be "leaving here on May 19th to go to a half-way house," see (Doc. 54), the Court issued an order directing Plaintiff to notify the Court of his address within twenty (20) days, as well as whether he intended to further pursue the matter against the named defendants. Id. The Court forewarned Plaintiff that his failure to communicate with the Court within twenty (20) days would result in dismissal of Plaintiff's case for failure to prosecute and comply with a court order under the authority of Federal Rule of Civil Procedure 41(b). Id.

On August 15, 2014, the July 29, 2014 Order was returned as undeliverable, with the notation "unable to forward." (Doc. 57). Since Plaintiff has not communicated with the Court, in any fashion, since his April 21, 2014 letter, the matter will be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

## II. Discussion

Federal Rule of Civil Procedure 41(b) permits a District Court to dismiss a plaintiff's case for failure to prosecute. See FED. R. CIV. P. 41(b) ("If the plaintiff

fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."). In so doing, the court must balance the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984.)

**A. Analysis of the Poulis Factors**

1. The extent of the party's personal responsibility.

A pro se plaintiff is responsible for his failure to comply with a court's orders. Emerson v. Thiel Coll., 296 F.3d 184, 191 (3d Cir. 2002). Plaintiff's brief in opposition to Defendants' motion to dismiss was originally due on February 25, 2014. Thereafter, Plaintiff was granted two enlargements of time, until April 7, 2014, to file a brief in opposition. (Docs. 45, 49). On April 21, 2014, Plaintiff wrote to the Court, indicating that he would be leaving SCI-Smithfield, but not notifying the Court of a forwarding address or, of his intent to file a brief in opposition. See (Doc. 54). That was almost four (4) months ago. At this point, the

Court has been waiting for almost six (6) months for Plaintiff to move the litigation forward and can only conclude that he is personally responsible for failing to comply with Court orders.

2. The prejudice to the adversary.

"Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir. 1994) (internal quotations and citations omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874. However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693–94 (3d Cir. 1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

In this case, Plaintiff's failure to litigate his claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instance, Defendants are plainly prejudiced by Plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v.

Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (concluding that failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (holding that failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (stating that failure to file an amended complaint prejudices defense and compels dismissal).

3. A history of dilatoriness

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874; see also Ware, 322 F.3d at 222 (finding that a history of dilatory conduct existed because the plaintiffs "failed repeatedly" to provide a damages calculation for the defendant); Emerson, 296 F.3d at 191 (determing that a history of dilatory conduct existed because the "procedural history of this case reflects continuous dilatoriness" as demonstrated by the plaintiff's multiple requests for stays and failure to comply with multiple deadlines).

As is clear from the procedural background of this case, Plaintiff failed to comply with multiple deadlines. Based on this conduct, the Court finds that over the past six (6) months, Plaintiff has consistently delayed this matter to the extent

that his conduct constitutes a "continuous stream of dilatory conduct." See Briscoe v. Klem, 538 F.3d 252, 261 (3d Cir. 2008).

4. Was the conduct willful or in bad faith?

Under this factor, the District Court must consider whether the conduct was "the type of willful or contumacious behavior which was characterized as flagrant bad faith." Adams, 29 F.3d at 875 (internal quotation marks and citation omitted). Generally, "[w]illfulness involves intentional or self-serving behavior." Id.; see also Emerson, 296 F.3d at 191 (finding bad faith because the conduct went beyond mere negligence). Over the course of the last months, Plaintiff has engaged in intentional and self-serving conduct in that he has sought extensions of time yet failed to follow through on any promises of action in furtherance of prosecution.

5. Effectiveness of sanctions other than dismissal.

Ordinarily, a District Court must consider the availability of sanctions alternative to dismissal. Poulis, 747 F.2d at 869. However, where a plaintiff is proceeding pro se, and additionally, is proceeding in forma pauperis, as is the case here, it has been found that no alternative sanctions exist because monetary sanctions, including attorney's fees, "would not be an effective alternative." Emerson, 296 F.3d at 191. In a scenario such as the present one, where the court is

faced with a complete lack of cooperation on the part of the individual that brought the action, the only appropriate sanction is dismissal.

6. Meritoriousness of the claim

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." Poulis, 747 F.2d at 869-70, citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984); Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982). The standard for a Rule 12(b)(6) motion to dismiss is utilized in determining whether a claim is meritorious. Poulis, 747 F.2d at 869-70. A claim, or defense, is considered meritorious when the allegations of the pleading, if established at trial, would support recovery by the plaintiff. Id.

Plaintiff alleges that Defendants were deliberately indifferent to his "8 fractured ribs, broken arm [and] busted up knee", that he had when he came into the Juniata County Prison. (Doc. 13, amended complaint). He states that on October 27, 2011, he "put a communication form into former Warden Thomas Lyter about the pain [he] was in, after [he] sent a request to medical, telling him [he] had sutures coming out" and he needed them checked. Id. Defendant Lyter wrote back and informed Auker that he had "a doctor's appointment in a couple of weeks." Id.

Also on that day, Plaintiff states that he "wrote to Deputy Warden Steve McLaughlin and explained to him [he] was in pain." Id. Plaintiff claims that although McLaughlin wrote back that he would have a doctor or nurse come see him, "it was a couple of days until they showed up." Id.

On January 2, 2012, Plaintiff states that he "had to put a grievance to have [his] medication changed" and that "Doctor Lori McConlogue O'Shaughnessy finally fixed [his] medication after 2 weeks." Id.

On March 15, 2012, Plaintiff claims that he "wrote a communication form to Acting Warden O'Neal to let her know [he'd] been letting medical know and that medical wasn't listening to [his] doctor's orders" and "all she said was staff is aware of [your] concerns." Id.

On March 18, 2012, Plaintiff wrote to Acting Warden O'Neal and "said if medical was concern [sic] of my issues, why am I missing doctors' appointments" and O'Neal wrote back "concerns have been discussed." Id.

On April 4, 2012, Plaintiff alleges that he went to Perry County Prison and "Juniata County Prison never sent any [medication] down" and he was "in pain for 2 days without medication." Id.

On April 16, 2012, Plaintiff "wrote Acting Warden O'Neal to let her know that he medical staff has broken [his] Eighth Amendment, [he's] missed doctors'

appointments, [he] never got to do physical therapy" and his "right arm healed wrong, and now [he] had to get [his] arm re-operated on." Id. Defendant O'Neal "wrote back and said [his] condition and concerns continue to be reviewed and addressed by medical staff and she'll forward this communication to medical staff." Id.

Based on these allegations, the Court concludes that Plaintiff's claims do not have merit in that such allegations likely would not support a claim for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id.; 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). Also, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones,

562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976). If there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

All indications are that this is a case involving Plaintiff's disagreement with the course of treatment he received while incarcerated at the Juniata County Prison, which is insufficient to sustain a cognizable constitutional claim. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976).

He further alleges that Defendants Lyter, O'Neal, and McLaughlin were made aware of his problems via the grievance procedure and that he received no response or help from them. (Doc. 1, at 5-8). However, if a prisoner is under the care of medical experts, as is the case here, a non-medical prison official cannot be

considered deliberately indifferent for failing to respond to an inmate's medical complaints, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are misleading (or not treating) a prisoner...." Spruill, 372 F.3d at 236; Durmer, 991 F.2d at 67. A non-physician defendant cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as a non-physician, he or she defers to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236. Accordingly, the claims against Defendants Lyter, O'Neal, and McLaughlin, the former, acting and deputy wardens of the Juniata County Prison, all non-medical defendants, are without merit.

Finally, to the extent that Plaintiff names the Juniata County Prison as a Defendant, a prison or correctional facility is not a "person" within the meaning of § 1983. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Philogene v. Adams County Prison, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997) (Rambo, C.J.); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, *1 (E.D. Pa. Feb. 28, 1995).

**B. Balancing of the Poulis Factors**

In balancing the Poulis factors, no single factor is dispositive, Ware, 322 F.3d at 222, and not all of the factors need be satisfied in order to dismiss a complaint. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992).

It is clear that, following a full analysis of the factors, the majority of the six factors weigh heavily in favor of Defendants and dismissal of the action for failure to prosecute.

A separate Order will be issued.

Dated: August 25, 2014

**United States District Judge**